Randy WILCOX, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 83–37.

Supreme Court of Wyoming.

Oct. 26, 1983.

Leonard Munker, State Public Defender, Wyoming Public Defender Program, and Sylvia Lee Hackl, Wyoming Public Defender Program, Cheyenne, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and James L. Carbone, Student Director, Wyoming Defender Aid Program, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Patrick Day, Legal Intern, Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellant Randy Wilcox was convicted by a jury of second degree arson as defined by § 6–7–102, W.S.1977.[1] The single issue is whether the trial court erred in refusing to grant a change of venue.

We will affirm.

In February, 1982, the Green Mill Bar in Rawlins, Wyoming, being purchased by appellant was almost completely destroyed by fire. Before his trial appellant moved the trial court for a change of venue on the grounds that both the pretrial publicity and television coverage prevented the impaneling of a fair and impartial jury.

The motion for a change of venue was supported with five newspaper clippings from a local newspaper. The articles said that appellant had been served notice a week before the fire that his payments on the Green Mill Bar were delinquent, that he had said he would burn down the bar rather than allow it to revert to the former owner, that he said he would get even because of the foreclosure, and that the deputy fire marshall had concluded that the fire "appeared to be deliberately set and definitely accelerated by a flammable liquid." The principal sources of these newspaper articles were materials in the court file and evidence produced at the preliminary hearing.

Appellant also supports his motion for a change of venue with identical affidavits executed by three residents of Rawlins, Wyoming. In general, the affiants said that in their opinion the newspaper articles indicated that appellant was guilty of arson; it was generally known that appellant made certain statements; there was general and great prejudice against appellant in Carbon County because of news items and special articles; they had heard statements by numerous members in the community of bias and prejudice against appellant; and appellant could not get a fair and impartial jury in Carbon County.

Wilcox stated that he was an alcoholic and well known in the community, and for those reasons argued that he should be granted a change of venue.

The trial court denied the motion for a change of venue.

Appellant contends that voir dire confirmed that there was great notoriety about

---

1. "Any person who willfully and maliciously sets fire to or burns or causes to be burned, or who aids, counsels or procures the burning of any building or structure of whatsoever class or character, whether the property of himself or another, not included or described in the preceding section [§ 6–7–101], shall be guilty of arson in the second degree * * *." Second degree arson has since been redefined and renumbered in § 6–3–102, W.S. 1977 (June 1983 replacement).

the fire and that there was prejudice and bias against him.

Voir dire revealed that eleven of the original panel of prospective jurors had heard about the case. One stated that the bar's burning and surrounding circumstances had been general conversation at the time. Another said that she "kind of lent [sic] toward one side of it," but that she could be impartial and decide the case solely on the evidence presented. Another stated that she felt the news articles had been slanted toward the prosecution, and was excused from the panel. Yet another prospective juror thought the case was all over, but in any event did not remember much about the matter. Still another said, "Everyone talks about it [the burning of the Green Mill Bar]." Others said that the bar's burning was "a gossip thing at the time." Two panel members indicated a prejudice against the "use of alcohol."

After voir dire appellant renewed his motion for a change of venue which was denied.

Rule 21, Wyoming Rules of Criminal Procedure, specifies the venue for the trial of criminal cases:

"Except as otherwise permitted by statute or by these rules, the prosecution shall be had in the county in which the offense is alleged to have been committed."

Rule 23(a), W.R.Cr.P., governing a change of venue provides:

"The court upon motion of the defendant made at least 15 days prior to the date set for trial, shall transfer the proceeding as to him to another county, whether or not such county is specified in the defendant's motion, if the court is satisfied that there exists within the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

We have frequently had occasion to decide requests for change of venue. In *Collins v. State*, Wyo., 589 P.2d 1283, 1289 (1979), we said:

"Under the criminal rule, in order for a change of venue to be granted, the burden is upon the defendant to show prejudice so great or general as to prevent his receiving a fair and impartial trial and the decision is within the sound discretion of the trial judge. [Citations.] * * *

"Where newspaper articles and radio news accounts are largely factual rather than inflammatory, they cannot be considered prejudicial. [Citations.]

" * * * Even if any juror was aware of, and could recall, the facts as reported by the news media, there is no requirement that such a person be totally ignorant of the facts and issues involved. [Citations.]"

■ Since the question of prejudice is largely one of fact, the trial court's ruling will stand unless it is clearly erroneous. *Chavez v. State*, Wyo., 604 P.2d 1341 (1979), cert. denied, 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980).

The Supreme Court case of *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), is applicable here:

"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.

"This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence represented in court. [Citations.]" Id., 366 U.S. at 722–723, 81 S.Ct. at 1642–1643, 6 L.Ed.2d at 756.

In *Irvin v. Dowd,* supra, the defendant had confessed to twenty-four burglaries and six brutal murders in a rural community. The publicity was so intense that the defendant's trial had become a "cause celebre." Before trial eight of the twelve jurors had formed an opinion that the defendant was guilty. The Supreme Court found that this was enough to require a change of venue.

We have held that before a change of venue is required, "there must be a showing of corrupting inflammatory publicity in comparable proportions to that shown in *Irvin v. Dowd.*" *Collins v. State,* supra, at 1289.

■ The burning of the Green Mill bar resulted in more than average news coverage because the bar had unique construction features and was a landmark. Extensive news coverage, however, does not automatically require a change of venue. *Shaffer v. State,* Wyo., 640 P.2d 88 (1982). Pretrial publicity, per se, does not create prejudice sufficient to prevent a fair trial. *Weddle v. State,* Wyo., 621 P.2d 231 (1980); and *Mares v. State,* Wyo., 500 P.2d 530 (1972).

The media accounts presented to the trial court to support the change of venue were limited almost entirely to reporting facts contained in the public record or developed at the preliminary hearing. Appellant greatly exaggerates his notoriety in the community. Of the few prospective jurors who knew Wilcox, only two or three knew him more than casually. Furthermore, only one newspaper article focused on appellant and it reported factual material. This type of reporting can hardly be called "inflammatory." Reference to appellant's alleged involvement in the fire was obscure; in fact, the focus was on the bar's unique construction features, historical value and contemplated demolition. Mention of appellant was only secondary and hardly likely to generate a "pattern of deep and bitter prejudice" throughout the community as was the situation in *Irvin v. Dowd,* supra.

Appellant cites *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), in support of his motion for a change of venue. In Rideau the defendant confessed to a murder while being interrogated. The confession was recorded by video cameras and broadcast several times over local television. Rideau was an extreme case where the public could actually view the defendant's confession of kidnapping and murder. The court felt that this much vivid publicity was sufficient to make voir dire examination nothing but a "hollow formality." According to the holding in Rideau there may be some instances where pretrial publicity is so inflammatory and intense that the court need not reach the finding of whether there is actual prejudice of the jurors as required by *Irvin v. Dowd,* supra.

Appellant argues that he is an alcoholic and well known in the community, and that his notoriety is especially great because he has a brother who is a television celebrity. This latter revelation might be of interest to a trivia buff, but has nothing to do with a change of venue. Nothing was said about appellant's more famous brother at the trial, nor was his alcoholism involved in any way.

■ The three affidavits that appellant submitted to the district court to prove prejudice are not, in and of themselves, sufficient to require a change in venue. *Mares v. State,* supra, at 535–536. A defendant must actually demonstrate existing prejudice in the minds of the jurors at the time of voir dire. *Collins v. State,* supra. "The ultimate test in the propriety of change in venue is what is revealed in voir dire of the jury panel." *Shaffer v. State,* supra, at 103.

■ Voir dire revealed that no juror or potential juror had a strong opinion about the case at the time of trial. The trial and the voir dire of the jury panel commenced about seven and one-half months after the fire, and many of the panel had forgotten the case. Of those who remembered any

details of the fire, no one carried into the trial a preconceived notion of guilt or innocence.

In this case no difficulty was experienced in selecting a jury. Only two potential jurors were challenged for cause, and pretrial publicity was not the basis for either challenge. Counsel for appellant asked the jury panel twice if any of them were affected by the publicity, and no affirmative response was given. After receiving no response, defense counsel passed the jury for cause. Voir dire reinforced the trial court's determination that a change of venue was not required.

Affirmed.