Peter Kole **MURRAY,**
Appellant (Petitioner),

v.

The **STATE** of Wyoming, Appellee
(Respondent).

No. 87–177.

Supreme Court of Wyoming.

June 21, 1989.

Martin J. McClain, Deputy State Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and David K. Gruver, Asst. Atty. Gen. (argued), for appellee.

Before CARDINE, C.J., and
THOMAS, URBIGKIT and MACY, JJ.,
and BROWN, J. Ret.*

CARDINE, Chief Justice.

Appellant, Peter Kole Murray, seeks review of the district court's order dismissing his petition for post-conviction relief. We affirm.

On January 18, 1983, a jury found Murray guilty of the crime of attempted sexual assault felony murder. Murray appealed that conviction, and we affirmed in *Murray v. State*, 671 P.2d 320 (Wyo.1983). The facts of the case are set out in that opinion. On August 19, 1986, Murray filed, pro se, a petition for post-conviction relief which raised three issues:

"[I] The petitioner was denied his rights under the Sixth Amendment to a fair and impartial jury in Lincoln County, Wyoming, due to extensive pretrial publicity.

"[II] The petitioner was denied his rights under the Sixth Amendment: and, the due process and equal protection clauses of the Fifth and Fourteenth Amendments: and, his rights under the Sixth Amendment to effective assistance of counsel when he was not provided the best defense available, a complete defense, and when the trial court repelled his right to assert complete defense which defense was best defense available.

"[III] The petitioner was denied his rights under the due process and equal protection clauses of the Fifth and Fourteenth Amendments when the prosecution knowingly entered fraudulent evidence."

In addition to raising these issues, Murray asked that counsel be appointed to represent him and that he be permitted to amend his petition and raise additional issues after consultation with counsel.

An attorney was appointed to represent Murray and an amended petition for post-conviction relief was filed on December 2, 1986. The amended petition incorporated by reference the pro se petition and raised five issues:

i. Refusal of Murray's Motion for Change of Venue denied him his right to a fair and impartial jury.

ii. The evidence presented to the jury was insufficient to sustain the jury's finding of guilt beyond a reasonable doubt.

iii. Wyoming's felony murder statute operates in such a manner as to allow a conclusive presumption on the issues of malice and premeditation and thus violates the rule of law enunciated in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

* Retired June 29, 1988.

iv. The trial court's refusal of an involuntary intoxication instruction denied Murray his constitutional right to a fair trial.

v. Murray was denied the effective assistance of counsel both at the trial stage and in the prosecution of his appeal to the Wyoming Supreme Court.

On June 16, 1987, the district court entered its order denying relief. On June 26, 1987, Murray filed a timely notice of appeal, and in his brief in this court he raised eight issues:

"1. Whether Appellant was afforded effective assistance of counsel during his trial or his appeal to the Wyoming Supreme Court.

"2. Whether the trial court erroneously denied Appellant's challenge for cause when eight jurors stated they would disregard the Court's instruction concerning the presumption of innocence and impose burden to prove his innocence on Appellant.

"3. Whether the introduction of Appellant's statements to law enforcement personnel was reversible error.

"4. Whether the use of a conclusive presumption to convict Appellant of first degree murder is plain error and requires reversal of the conviction.

"5. Whether it was error to allow the testimony of Dr. Cline.

"6. Whether the trial court's refusal to instruct the jury upon the defense of involuntary intoxication deprived Appellant of his constitutional right to have all questions of fact resolved by the jury.

"7. Whether Appellant was denied his right of confrontation by the admission of numerous statements made by the decedent.

"8. Whether Appellant was denied the effective assistance of counsel when neither Sonya Martin was called to testify nor her out of court statements introduced into evidence pursuant to Rule 804 of the Wyoming Rules of Evidence."

■ Post-conviction relief, governed by W.S. 7–14–101 et seq., performs the same limited function as did the writ of coram nobis. It is not a substitute for direct appeal and is limited to review of specific types of error. 18 Am.Jur.2d Coram Nobis § 45, at 673 (1985). Post-conviction relief is an extraordinary authorization to seek relief under circumstances which suggest a "miscarriage of justice." *Cutbirth v. State*, 751 P.2d 1257, 1261 (Wyo.1988). The substance of a fair trial must be missing in order to justify its application. *Id.; State ex rel. Hopkinson v. District Court, Teton County*, 696 P.2d 54, 64 (Wyo.1985); *Johnson v. State*, 592 P.2d 285 (Wyo.1979).

■ Because the relief intended to be provided by the post-conviction procedure is extraordinary, we have imposed some rather strict limitations on the issues which may be raised in the procedure. Issues which have been or could have been raised on appeal are not open to challenge by a petition for post-conviction relief because they are foreclosed by the doctrine of res judicata. *Cutbirth*, 751 P.2d at 1261; *Hopkinson*, 696 P.2d at 64. Moreover, W.S. 7–14–103 provides that any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.

■ We proceed to apply these rules to the issues raised by appellant in this court. Issues enumerated 2, 3, 5, 7 and 8 were not raised in the trial court and were thus waived. W.S. 7–14–103. We will not consider these issues on appeal. Issue enumerated 2 is really a variation of an issue raised in his original appeal which asserted that the trial court erroneously denied his motion for change of venue. *Murray v. State*, 671 P.2d at 325–27. We explored the issue in detail in that opinion, including the variation raised as issue 2 in this appeal. Although appellant's failure to raise the issue in the district court is dispositive, we note this additional reason why issue 2 must be rejected.

■ Appellant asserts ineffective assistance of trial counsel in the first half of issue enumerated 1. The issue of effective assistance of counsel at the trial level and issues enumerated 4 and 6 are issues which could have been raised in appellant's original appeal to this court, and we will, there-

fore, not consider them in the context of a post-conviction procedure. *Cutbirth*, 751 P.2d at 1261–62.

As in Cutbirth, we are finally left with the issue of ineffective assistance of appellate counsel. Cutbirth was decided after this case had been processed through the trial court. The trial court, therefore, did not have the benefit of the test we formulated for determining claims of ineffective assistance of appellate counsel, that test being:

> "In submitting a claim of deficient representation by appellate counsel, the petitioner in the post-conviction proceeding must demonstrate to the district court, by reference to the record of the original trial without resort to speculation or equivocal inference, what occurred at that trial. The particular facts upon which the claim of inadequate representation by appellate counsel rests must be presented. The petitioner must then identify a clear and unequivocal rule of law which those facts demonstrate was transgressed in a clear and obvious, not merely arguable, way. Furthermore, the petitioner must show the adverse effect upon a substantial right in order to complete a claim that the performance of appellate counsel was constitutionally deficient because of a failure to raise the issue on appeal. The adverse effect upon a substantial right in the context of ineffective assistance of appellate counsel is shown by demonstrating a ' * * * reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' In this regard the test does address the fairness and integrity of the judicial proceedings. The reasonable probability must be one that demonstrates a more favorable result to the appellant if the omitted issue had been pursued." (Citations omitted.) *Cutbirth*, 751 P.2d at 1266–67.

We have held that ineffective assistance of appellate counsel is not subject to the waiver doctrine. We therefore must consider on review appellant's claim of ineffective assistance of counsel and resolve that issue. Three matters were presented to the trial court that could be the basis for the assertion of ineffective assistance of appellate counsel. They are:

1. Should a competent appellate counsel have raised as an issue on appeal the assertion that Wyoming's felony murder statute operates in such a manner as to allow a conclusive presumption as to the issues of malice and premeditation?

2. Should a competent appellate counsel have raised as an issue on appeal the refusal of the trial court to give an involuntary intoxication instruction?

3. Should a competent appellate counsel have raised as an issue on appeal an assertion that Murray was denied the effective assistance of trial counsel?

When these three questions are tested against our holding in Cutbirth, it is clear that no viable issue of ineffective assistance of appellate counsel could be sustained by the record in this case.

With regard to Wyoming's felony murder statute, appellant can point to no clear and unequivocal rule of law which would have prompted an appellate counsel to raise that issue. Rather it is clear that such a rule would plow wholly new ground. No jurisdiction has held that a felony murder statute violates the rule of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

With regard to the trial court's refusal to give an involuntary intoxication instruction, there is a clear rule of law which requires a trial court to give a correct instruction to the jury encompassing the defendant's theory of the case, provided that defendant offers a sufficient instruction and the theory is supported by competent evidence. *Best v. State*, 736 P.2d 739, 744 (Wyo.1987). In Best we also noted that the source of the competent evidence can be solely from the defendant himself. In this case, appellant did not testify. Appellant's counsel did elicit from several witnesses on cross-examination that appellant claimed, on the night the crime took place, that he had been "stuck

with a needle" and suggested that he may have been drugged. One of these witnesses asked appellant about this claim the day following his crime; and at that time, appellant responded that he did not know why he would have made that claim. It is clear from the record that appellant defended on the theory that he did not commit the crime at all, not that he had done it under the influence of an intoxicating substance that had been administered to him against his will. The claim of error in the court's refusal of the involuntary intoxication instruction was at most an arguable proposition and not one that violated the governing rule of law in a clear and obvious way. Therefore, failure to raise the issue in the direct appeal does not result in ineffective assistance of appellate counsel.

We have adopted a clear rule of law that to establish ineffective assistance of counsel at the trial it must be demonstrated that counsel's representation was deficient by showing errors were made that were so serious that counsel was not functioning in accordance with the constitutional guarantee of counsel and that the deficient performance prejudiced the appellant. *Frias v. State*, 722 P.2d 135, 145–47 (Wyo. 1986); *Cutbirth*, 751 P.2d at 1263–64. No such demonstration was made to the district court, to this court, nor is it apparent in the record of this case. The most that can be said is that other strategies, all of which were much less likely to succeed than those chosen by trial counsel, might have been employed. We do note that appellant was represented by one of the most experienced and capable trial attorneys in the public defender's office; and based on the totality of the record, we are comfortable with the conclusion that he afforded the appellant effective legal assistance.

Those claims cognizable in this court as bearing on the issue of effective assistance of appellate counsel do not support the appellant's contentions.

The judgment of the district court is affirmed.

URBIGKIT, Justice, dissenting.

After an abysmally insufficient appellate brief on first appeal, *Murray v. State*, 671 P.2d 320 (Wyo.1983), we are now presented with an obligation to consider by post-conviction-relief petition the life sentence of Peter Kole Murray. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821, *reh'g denied* 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985); *Anders v. State of California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, *reh'g denied* 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967); *Jones v. State*, 27 Ark.App. 24, 765 S.W.2d 15 (1989). From this majority's present disindigenous waiver/forfeiture disengagement from the issues of that conviction, I respectfully dissent.

My aversion to the waiver/forfeiture thesis for disposition of constitutional issues involving ineffectiveness of counsel has been pursued extensively in *Amin v. State*, 774 P.2d 597 (Wyo.1989) and *Kallas v. State*, 776 P.2d 198 (Wyo.1989). This third case as also mired in the morass of waiver/forfeiture presents a different perspective where a post-conviction-relief hearing was actually held, although evidentiary presentation was denied. Here as differing from *Amin*, this majority recognizes that a new system was created in *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988) for which retroactive application to prior hearings in other cases would be a strained adjudicatory process. Here, at least, ineffectiveness of the clearly apparent appellate counsel's presentation on first appeal does require review. I continue to reject the illogical and inefficient disregard by waiver/forfeiture of constitutional right as an adaptation of this court to ineffectiveness cases from preclusion by neglect of appellate counsel. Additionally, I call into question both the standard itself and its individualized application to this case.

In initial appeal, appointed counsel for Murray found only two issues to consider:

1. [Whether] "[t]he trial court erred in denying appellant's motion for change of venue, which motion alleged that extensive pre-trial publicity made it impossible to select a fair and impartial jury."

2. [Whether] "[t]he trial court erred in denying appellant's motion for judg-

ment of acquittal since there was insufficient evidence upon which the jury could base a verdict of guilty beyond a reasonable doubt."

*Murray,* 671 P.2d at 323.

A change of venue in a criminal case by W.R.Cr.P. 23 (F.R.Cr.P. 21) is vested in the discretion of the trial court and since this specific rule was last adopted in 1969, this court has apparently never reversed a criminal conviction founded on claimed error in denied change of venue. Actually, compelling consideration has probably never been given to these attempts by counsel for the convicted defendant to reverse conviction since *Hamilton v. Territory of Wyoming,* 1 Wyo. 131 (1873) or about one hundred and fifteen years ago. In that case, the conviction for maintaining a house of prostitution was reversed, although not on the requested venue change but from prejudice of the judge in the misdemeanor case since the right to change the judge was mandatory, but to have a venue change was only discretionary. *See State v. Hambrick,* 65 Wyo. 1, 196 P.2d 661, *reh'g denied* 65 Wyo. 1, 198 P.2d 969 (1948) and *State v. Vines,* 49 Wyo. 212, 54 P.2d 826 (1936).[1] Any criminal conviction appeal on a claim of abuse of discretion for a denied venue change with history lacking at least one success in over a hundred years is a slender reed for appellate advocacy. Additionally, that particular issue was not sufficiently documented for adequate presentation as witnessed by the superior effort made in post-conviction-relief presentation in this present appellate sequence.

Sufficiency of the evidence appeals have not encountered a singularly higher degree of acceptability in this court. Success is almost totally confined to cases where any proof of an indispensable element is totally missing. *See Mendicoa v. State,* 771 P.2d 1240 (Wyo.1989) and *Eagan v. State,* 58 Wyo. 167, 128 P.2d 215 (1942). *Compare Munson v. State,* 770 P.2d 1093 (Wyo.1989) and *Dangel v. State,* 724 P.2d 1145 (Wyo. 1986).

At best, the first appeal and included briefing in this case were pro forma. Actually, after comparison of the appellate brief with the post-conviction-relief brief, Murray would have been better served to have written that first brief himself rather than to rely on his appointed counsel. The vibrancy of perceived responsibility to attack his conviction was missing. There certainly was not the "antagonist, the fighter, the inexorable adversary" portrayed. *See Anders,* 386 U.S. 738, 87 S.Ct. 1396 and I. Stone, Clarence Darrow for the Defense (1941).

Consequently, for this ineffectiveness of appellate counsel inquiry as related to trial processes, court decisions and omissions of trial counsel, if any, we are called to examine responsively what was omitted from the first appellate brief as apparent issues since, in essence, nothing of merit was included. Close reference to this present 70–page appellant brief is required (as the maximum permitted by this court's rules), compared persuasively to the 23–page life sentence, first appellate brief presentation. These present issues as quoted in the majority include:

(a) Questions of basic law in first appeal;

(1) *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) conclusive presumption in felony murder conviction;

(2) denial of involuntary intoxication instruction;

---

1. More current cases where the defendant has uniformly been unsuccessful in reversing a criminal conviction on a claim of error in denied change of venue include: *Murray,* 671 P.2d 320; *Wilcox v. State,* 670 P.2d 1116 (Wyo.1983); *Shaffer v. State,* 640 P.2d 88 (Wyo.1982); *Weddle v. State,* 621 P.2d 231 (Wyo.1980); *Chavez v. State,* 604 P.2d 1341 (Wyo.1979), *cert. denied* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980); *Collins v. State,* 589 P.2d 1283 (Wyo. 1979); *Valerio v. State,* 542 P.2d 875 (Wyo. 1975); *Jackson v. State,* 522 P.2d 1356 (Wyo.),

*cert. denied* 419 U.S. 1055, 95 S.Ct. 637, 42 L.Ed.2d 652 (1974); *Mares v. State,* 500 P.2d 530 (Wyo.1972); *Moss v. State,* 492 P.2d 1329 (Wyo. 1972); *Crouse v. State,* 384 P.2d 321 (Wyo.1963); and *State v. Spears,* 76 Wyo. 82, 300 P.2d 551 (1956). More recent decisions include: *Pote v. State,* 733 P.2d 1018 (Wyo.1987); *Murry v. State,* 713 P.2d 202 (Wyo.1986); *State ex rel. Hopkinson v. District Court, Teton County,* 696 P.2d 54 (Wyo.), *cert. denied* 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985); and *Pote v. State,* 695 P.2d 617 (Wyo.1985).

(3) improperly denied challenges for cause; and

(4) community prejudice and publicity involving inappropriate denial of the request for a change of venue;

(b) evidentiary errors at trial;

(1) admission of improperly obtained inculpatory admissions from defendant without appropriate Miranda warning;

(2) admission of expert witness testimony on a rapist profile identification of the defendant; and

(3) admission of statements of decedent following the offense and prior to death;

(c) ineffectiveness of trial and appellate counsel which deterred or excluded consideration of these issues in proper appellate context.

As a response to these present issues, the State challenges consideration of juror claim, admission of inculpatory statement of Murray, admission of rape profile testimony, admission of decedent's statement and ineffective assistance of trial counsel because they "were never raised in either the original or the amended petition for post-conviction relief." Conversely, the State then makes the argument that appellant has not established that he was denied effective assistance of either trial counsel or appellate counsel from representation at trial or forfeiture of issues by non-inclusion on appeal. As following, the State considers the *Sandstrom* felony murder question in argument three. Argument four asks whether appellant established a substantial denial of his constitutional rights by the trial court's failure to instruct on the defense of involuntary intoxication and argument five states, "[d]id appellant establish a substantial denial of his constitutional rights by the trial court's denial of his challenge for cause of eight jurors?" This majority adopts the structure of argument created by the State, determines that ineffectiveness of trial counsel was waived or forfeited by appellate counsel and that appellate counsel was not ineffective and that forfeiture denies consideration of all of these issues after exclusion from the initial appellate brief.

Differing from my application in *Kallas,* 776 P.2d 198, I am not going to address each issue now presented since most issues have not been considered substantively by either the State in their brief or this majority in decision. My direction is to demonstrate how absurd these waiver/forfeiture results become within a rational supervision of the justice delivery system responsibility and for individual case resolution.

Having established what first appellate counsel presented (nothing of substance), we are directed to what the trial court on post-conviction relief then decided in its order denying relief:

> After having fully examined the court file, affidavits, transcripts, and all other evidence cited by petitioner, the conclusion is that there are no legal grounds upon which relief should be afforded. The petition should be denied.

Thereafter, the trial court disposed of the first two issues on res judicata from initial appeal, decided that the third argument was invalid as a matter of law and as to the fourth argument, decided there was no evidence except from Murray leaving absent any factual basis to provide the jury instruction. The admissibility of evidence was rejected as a contention and finally, in regard to ineffectiveness of counsel, the trial court discerned in its order:

> Lastly, petitioner contends he was denied effective assistance of counsel. There is absolutely no evidence of this claim in the record, nor in the petition. Post-conviction relief on the basis of inadequacy of counsel is not warranted absent evidence in the record to suggest incompetence. *Bibbins v[.] State[,]* 696 P.2d 1300 (Wyo.1985). No evidence presented by the petitioner suggests inadequacy of counsel. No evidence exists in the record to suggest incompetence. This claim must therefore be denied.

The major difficulty with the present proceeding is that where ineffectiveness of counsel issues are to be considered, the record of the trial and first appeal is not now presented in this record from the post-conviction-relief proceedings. Additionally, the denial by the trial court of any eviden-

tiary hearing on the post-conviction-relief petition excludes Murray's factual inquiry and our substantive or thoughtful appellate analysis.

One issue, whether or not properly presented here by adequate presentation in trial court, should have required reversal by a continuum of the application of plain error.[2] That issue is the admission of testimony of an expert on a "rapist profile." The rape perpetrator profile is singularly similar to the expert witness who provides the sex abuser profile. Admission of this kind of irrelevant and clearly prejudicial testimony as non-determinative evidence is universally held to be improper and usually prejudicial to an extent which requires reversal. See *Hall v. State*, 15 Ark.App. 309, 692 S.W.2d 769 (1985); *State v. Clements*, 244 Kan. 411, 770 P.2d 447 (1989); and *State v. Maule*, 35 Wash.App. 287, 667 P.2d 96 (1983). On this subject, the testimony of Dr. Victor Cline was admitted over objection for him to opine about a profile of a rapist, which would be consistent with any and all drunks whose earlier propositions to another female had been rejected. By any standard, that character of evidence under the *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013 (1923) test or W.R.E. 802 was inadmissible and probably reversible error in a circumstantial evidence criminal case.

It was obvious incompetence for appellate counsel to omit this issue on appeal. *See State v. Bressman*, 236 Kan. 296, 689 P.2d 901, 907 (1984) and *Windmere, Inc. v. International Ins. Co.*, 105 N.J. 373, 522 A.2d 405 (1987). Since the substance was serious, significant and apparent, conduct of appellate counsel as ineffective meets the test in omission of *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Surely we can recognize that every drunk who propositions a

female and is rejected does not then become a definable rapist prospect for anyone else. The evidence was "distractive and prejudicial." *Hall*, 692 S.W.2d 769; *Maule*, 667 P.2d 96. Tried and denied does not necessarily create a rape perpetrator.

I particularly make note that even more valid evidence than testimony of an expert witness has been rejected by this court when tendered for defense. *Krucheck v. State*, 702 P.2d 1267, 1271 (Wyo.1985); *Jahnke v. State*, 682 P.2d 991, 1005 (Wyo. 1984); *Buhrle v. State*, 627 P.2d 1374 (Wyo.1981); *Smith v. State*, 564 P.2d 1194 (Wyo.1977). *See also, Rules for Admissibility of Scientific Evidence*, 115 F.R.D. 79 (1987) as supplementing the earlier *Symposium on Science and the Rules of Evidence*, 99 F.R.D. 187 (1983) on expert testimony. W.R.E. 702 cannot reach sufficiently far as to characterize all males who reach an alcoholic state to be anticipatory rapists. At least three of the usual four-point criteria of expert witness evidentiary admissibility are missing. *United States v. Kozminski*, 821 F.2d 1186, 1194 (6th Cir.), *cert. granted* — U.S. ——, 108 S.Ct. 225, 98 L.Ed.2d 185 (1987), *judgment aff'd and remanded*, — U.S. ——, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988) states the four-point test as:

> For expert testimony to be admissible under Rule 702, a four-part test must be met: (1) a qualified expert; (2) testifying on a proper subject; (3) *in conformity to a generally accepted explanatory theory;* (4) the probative value of which outweighs any prejudicial effect. [Emphasis in original.]

Even if here we do not question the status of "a qualified expert," the remaining requirements are absent. Giannelli, *The Admissibility of Novel Scientific Evidence: Frye v. United States, A Half–Century*

---

**2.** In academic concept, the petition for post-conviction relief explicitly stated ineffectiveness of counsel as cause for reversal as addressing both trials in initial appellate counsel. We are faced with a denied hearing and present concept that the issue detail was not adequately developed in pleading for a hearing to be held. In essence, for post-conviction relief, this majority requires regression to the days of Code pleading. That regression in continuity only shows that this majority intends to assure that post-conviction relief never has any adjudicatory substance. I fail to see what is wrong if more specificity is needed for response by the State to leave that responsibility with litigants to pursue through motions to make more definite and certain or identify and specify if a claim of ineffectiveness of counsel is too broadly floating before an evidentiary hearing can be held to provide the details by evidence and argument.

*Later,* 80 Colum.L.Rev. 1197 (1980). Unfortunately, this singular issue of clearly prejudicial and erroneous trial evidence was lost from appellate review by omission in the initial brief and now by forfeiture, waiver and denied hearing.

If this court and the Wyoming criminal justice system are going to live and die with waiver/forfeiture from non-inclusion in an initial appeal, then this court automatically approves and mandates opportunity before initial appeal to supplement the record in some proceeding. Contrary to what the court has suggested, we have followed an absolutely mandated rule that the record may not be supplemented by what was not considered by the trial court.

> The Wyoming Rules of Criminal Procedure and the Wyoming Rules of Appellate Procedure are replete with means by which a record can be augmented so that all issues which can or should be treated on appeal may be supported by reference to a record on appeal.

*Kallas,* 776 P.2d at 200. *See Spilman v. State,* 633 P.2d 183 (Wyo.1981). The reference by this court in *Kallas* misapplies the citation given and misdirects the subject raised. *Spilman,* of course, does not apply since it involved proceedings within the trial itself that were not recorded, namely voir dire and opening and closing statements and the issue of incompetency of trial counsel in the failure to have a reporter present. That incompetency is obviously demonstrated by the court in that a reconstruction of the record might have occurred. However, those events did occur before the trial court and reconstruction which involved the participation of the trial court augmenting a record for evidence which was not presented to the trial court recreates within the appellate court as a superannuated retrial tribunal. Specifically, we are then required in first appeal to consider for ineffectiveness issues facts beyond the initial trial transcript and record.

Another significant and highly questionable omission by appellate counsel devolves from the non-inclusion of the denied involuntary intoxication instruction by the trial court before submission to the jury. This record is complete in effectively showing that the deputy sheriff and his wife, Gregg Goodman and Carol Goodman, engaged deliberately in getting Murray extremely drunk during the evening when the incident occurred. Further in question was some evidence within the context of the weight to be assessed whether Murray was also injected with a drug. They deliberately got him drunk and whether something else occurred is at least suggested to a state of conjecture.

Ineffectiveness of appellate counsel is inexcusably injected in failure to include this principal defense issue and instruction denial as a major presentation in first appeal rather than venue and evidentiary sufficiency. This was not only in the words of the majority "an arguable proposition," but a principal effort in defense to be denied when the tendered instruction was rejected. Any reading of the record reveals that this defense effort was a principal strategy in trial presentation.

In totality then as ineffectiveness of counsel issues now rejected by forfeiture or summary adjudication, this case presents:

1. Adequacy of trial in first appellate presentation of prejudicial climate regarding a change of venue;

2. Inadequate appellate presentation of fair and impartial juror, denied challenges for cause;

3. Introduction of involuntarily obtained inculpatory statements of Murray;

4. Use of conclusive presumption instruction from felony murder premised conviction;

5. Use of expert witness to establish a profile of a rapist to fit the drunken condition of Murray;

6. Denial of involuntary intoxication instruction;

7. Introduction of hearsay testimony of decedent's statements; and

8. Rejection for introduction of evidence of a subsequent rape in the community of the same character while Murray was in jail by virtue of the non-appearance of the subpoenaed witness.

In considering his life sentence, Murray actually only has now in two appeals received substantive review on change of venue, sufficiency of the evidence and the legal issue of conclusive presumption. This is neither an adequate access to justice nor justifiable legal representation for me. No matter what may have been the result of substantive review after trial court factual hearing and proper briefing, this procedural disposition fails to meet the criteria of equal protection and due process for which post-conviction-relief proceedings were initially enacted. If nothing else, Murray should be entitled by examination and analysis to review the quality of the legal assistance he received in first appeal. The thoughtful writing of Shklar in Comment, *Giving Injustice Its Due,* 98 Yale L.J. 1135 (1989) is objectively informative. In constitutional perspective, this appeal bespeaks to procedural injustice.

Whatever may be the conception of this court in predilection of guilt by factual analysis, Murray had some very basic due process and equal protection questions that called for our appellate review. The synopses of "Goodness, he must be guilty" and "gone constitutional rights" as adjudicative processes lack persuasive validity. Whatever mission impelled Murray's first appellate counsel, whether inattention or disinterest, it cannot meet the calling of advocacy responsibility required for a participant in the justice delivery system. Two most contemporary national leaders could have received short shift if this is the only limiting standard of our justice delivery system.[3]

Due process and equal protection should not be extinguished as applied to anyone who is brought forward to the bar of justice to answer for a contended criminal offense. A fourth grader by the laws of accident could have more suitably stood forward to sustain the interest of Murray as appellate counsel. In this re-examination, we now become infected with the same promiscuous virus when absolution to absurdity for first effort is presented as preclusion denying access to constitutional rights when resulting from the repelling viscosity of counsel failure and consequent forfeiture. A realistic evidentiary hearing and a reasoned decision are not unjustified. *Compare Osborn v. State,* 672 P.2d 777 (Wyo.1983), *cert. denied* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984) and subsequent proceedings with *Osborn v. Shillinger,* 639 F.Supp. 610 (D.Wyo.1986) and affirmed by *Osborn v. Shillinger,* 861 F.2d 612 (10th Cir.1988).

Consequently, I dissent.

---

**3.** The abrogation of the post-conviction review as a constitutional responsibility of this court to provide assurance to the defendant of the constitutional guaranty of adequate representation of counsel can be found by a comparison of this case with just a sampling of very recent cases from other jurisdictions: *Osborn v. Shillinger,* 861 F.2d 612 (10th Cir.1988); *Freels v. Hills,* 843 F.2d 958 (6th Cir.1988); *Jenkins v. Coombe,* 821 F.2d 158 (2d Cir.1987), *cert. denied* — U.S. ——, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988); *State v. Crenshaw,* 210 Conn. 304, 554 A.2d 1074 (1989); *Bassett v. State,* 541 So.2d 596 (Fla. 1989); *Arencibia v. State,* 539 So.2d 531 (Fla. App.1989); *Madden v. State,* 535 So.2d 636 (Fla. App.1988); *People v. Albanese,* 125 Ill.2d 100, 125 Ill.Dec. 838, 531 N.E.2d 17 (1988), *cert. denied* — U.S. ——, 109 S.Ct. 2088, 104 L.Ed.2d 652 (1989); *State v. Broussard,* 539 So.2d 745 (La.App.1989); *Leatherwood v. State,* 539 So.2d 1378 (Miss.1989); *Bonner v. State,* 765 S.W.2d 286 (Mo.App.1988); *Com. v. Ciotto,* 555 A.2d 930 (Pa.Super.1989); *Frett v. State,* 378 S.E.2d 249 (S.C.1988); and *State v. Mullins,* 767 S.W.2d 668 (Tenn.Cr.App.1988).

As the Montana court discerned:

Further, the mere fact of representation by counsel is not per se sufficient. In order to give meaning to the constitutional guarantees, the assistance must be effective. *State v. McElveen* (1975), 168 Mont. 500, 503, 544 P.2d 820, 822. Only then, can the right to the assistance of counsel, and the right to a fair trial, have true meaning.

*State v. Enright,* 758 P.2d 779, 781 (Mont.1988). *See Richardson v. State,* 189 Ga.App. 113, 375 S.E.2d 59 (1988) and *Com. v. Stonehouse,* 555 A.2d 772 (Pa.1989).