Earl Joseph OLIVER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 22097.

United States Court of Appeals
Ninth Circuit.

July 17, 1968.

Rehearing Denied Aug. 9, 1968.

Earl Joseph Oliver, in pro. per.

William Matthew Byrne, U. S. Atty.,
Robert L. Brosio, Robert M. Talcott, Asst.
U. S. Attys., Los Angeles, Cal., for appellee.

Before HAMLEY, ELY and CARTER,
Circuit Judges.

354

HAMLEY, Circuit Judge:

This is an appeal by Earl Joseph Oliver, a federal prisoner, from an order denying his application, under 28 U.S.C. § 2255 (1964), to vacate the judgment and sentence under which he is imprisoned.

On May 5, 1964, three men, using a shotgun and pistol, robbed a Los Angeles bank of $7,569.44. In doing so they assaulted and put in jeopardy the life of a bank employee. During the course of the robbery the police were alerted. As the robbers were leaving the bank with the loot, two police officers intercepted them and a running gun battle ensued.

All three of the robbers were wounded but one escaped, to be apprehended later. A bystander received multiple shotgun pellet wounds in the face, neck and chest. Oliver was one of the two robbers captured and arrested at the scene of the crime. He was literally caught red-handed, as he had been shot through the left ring finger in the course of being apprehended.[1]

In a three-count indictment alleging violations of 18 U.S.C. § 2113(a) and (d) (1964), Oliver was charged not only with this offense but also with two similar bank robberies in which the same three men participated. The other robberies were alleged to have been committed on February 14 and March 5, 1964, during which over $25,000 was taken. According to the indictment, in each of these prior bank robberies a life was placed in jeopardy by the use of a shotgun and pistol.

On June 15, 1964, Oliver pleaded not guilty to each count. On September 1, 1964, he changed his plea to guilty on the third count, involving the May 5, 1964 robbery. On September 21, 1964, the district court imposed upon him a twenty-five year sentence.[2] The other two counts were thereupon dismissed.

Oliver did not appeal from the judgment of conviction. On October 26, 1964, he filed a petition for rehearing, and a motion under Rule 35, Federal Rules of Criminal Procedure. The petition and motion were denied and Oliver did not appeal. On May 9, 1966, Oliver filed an application under section 2255 to vacate the judgment and sentence. The application was denied. Oliver tried to appeal, but his application to proceed in forma pauperis was denied and the appeal was not perfected.

He filed the instant section 2255 application on March 24, 1967. He sought relief on three grounds: (1) he was mentally incompetent at the time he pleaded guilty; (2) the plea of guilty was the product of coercion and false promises to the effect that he would, after pleading guilty, be committed for a study under 18 U.S.C. § 4208(b) (1964), after which he would be sentenced to imprisonment for not more than ten years; and (3) at the time he pleaded guilty the procedures specified in Rule 11, Federal Rules of Criminal Procedure, were not followed.

The application was denied without hearing. On this appeal Oliver renews each of these grounds for relief, arguing that his allegations in the district court concerning them at least entitled him to an evidentiary hearing.

With regard to the mental incompetency ground, which Oliver raised for the first time in this third collateral proceeding, his principal factual allegation is that at the time of the sentencing he requested the court for a psychiatric evaluation "because I think I need it." Ex-

---

1. The shotgun had been carried by one of his accomplices. The record does not indicate whether Oliver carried the pistol.

2. In imposing this sentence the district court noted that Oliver had a prior record extending back to 1929 and including grand theft, burglary, kidnapping in connection with robbery (twice), man-

slaughter, and two parole violations. Before sentencing Oliver the district court told Oliver that his only regret was that the Government allowed him to plead to only one count, "because if you had pleaded to more than one count I would have made the sentences consecutive. * * *"

amination of the record indicates that he made such a statement and that he also told the court:

"It shows through the record that I need it, I believe. I have had a long record and I don't know the reason for it. So I believe it would aid me."

But the record also indicates that what Oliver was requesting, and what his lawyer was also seeking, was a study under 18 U.S.C. § 4208(b). The purpose of such a study, as the statute expressly states, is to provide the court with more detailed information "as a basis for determining the sentence to be imposed * * *." Neither Oliver nor his attorney told the court at that time that there was a question as to Oliver's mental competency to enter a plea of guilty.[3] Neither of them made a motion under 18 U.S.C. § 4244 (1964) for a judicial determination of Oliver's mental competency to enter a plea.[4]

Nor does Oliver allege that at any later time, prior to the filing of this section 2255 application, he made a representation to the court, prison officials, his lawyers, or anyone else, that he was not mentally competent at the time he entered his plea. He makes no allegations concerning prison conduct or prison studies and reports bearing upon his mental competency. He makes no allegations of a history of mental illness, or of mental illness in the family. The probation report which was before the court when the plea was accepted contains the statement: "there are no indications of an emotional imbalance in the family background."

Mental incompetency of the accused to enter an intelligent plea of guilty is available as a ground of collateral attack under section 2255. United States v. McNicholas, 4 Cir., 298 F.2d 914, 916. But here the application and supporting papers recite only bare conclusions on the matter, unsupported by any factual allegations not belied by the record. Under these circumstances the district court had the power to reject this ground for relief without a hearing. See Sanders v. United States, 373 U.S. 1, 19, 83 S.Ct. 1068, 10 L.Ed.2d 148.[5]

---

3. At the sentencing Oliver's lawyer told the court, among other things:
   "I may say while I have been in the case I have made an independent investigation, because I felt some doubt about Mr. Oliver's mental condition as he testifies in court he himself feels about it. I notice what to me is apparently a great inconsistency, his actions as set forth in the report and the personality he exhibits to me man to man. I will say I made what I hoped would be a sufficient investigation to elicit information that might lead me to obtain evidence that would justify a plea of not guilty by reason of insanity. I still have the same feeling that this man may be motivated to some extent by factors which could be more explicitly defined if he were observed during a period provided for in the code section."
   Read in context with other statements made by Oliver's lawyer, it is clear that counsel was not here suggesting that Oliver was mentally incompetent to plead guilty, but that it would be well to have a section 4208(b) study "so that the Court may be free to act in the case if any further information justifying mitigation of sentence or showing possibility of rehabilitation may develop during the period provided for in the code section [section 4208]."
   Section 4208(b) may not properly be used to determine competency to stand trial and enter a plea. See Van De Bogart v. United States, 5 Cir., 305 F.2d 583, 587.

4. We do not imply that, absent a timely request for a section 4244 study, a federal prisoner may not later raise the question of his mental competency to enter a plea. We are here merely addressing ourselves to Oliver's principal factual allegation—that he raised the question of his mental competency to plead at the time of the sentencing. The record completely refutes this allegation.

5. If Oliver has any factual basis for his conclusion that he was mentally incompetent when he entered his plea, our decision in this case will not stand in the way of a new application setting out such factual allegations. As noted in Sanders v. United States, 373 U.S. 1, 19, 83 S.Ct. 1068, 10 L.Ed.2d 148, where there are insufficient factual allegations to warrant an evidentiary hearing, it is usually better practice to direct the applicant to amend his application, rather

Nor, under the circumstances of this case, was Oliver entitled to a hearing on the coercion and promises allegations. These were based entirely on asserted assurances and promises made to him by his counsel, that after pleading guilty, he would have a section 4208(b) examination and then would be sentenced to not more than ten years imprisonment.

In a written document signed by him and filed immediately before his plea of guilty was accepted, Oliver stated that he had been advised, among other things, that the maximum penalty was twenty-five years imprisonment and a $10,000 fine; he might not be granted probation; if he pleaded guilty the court might impose the same sentence as if he pleaded not guilty; he should not plead guilty if he is actually innocent; and if he pleaded not guilty he would be accorded certain constitutional rights in connection with his trial, naming them. In this statement Oliver also declared that his plea of guilty was free and voluntary, and given of his own accord with understanding of the nature of the charge, the consequences of the plea, and as to any possible defenses he might have.

 Oliver alleges in his section 2255 application that, in view of the assurances and promises he had received from his counsel, he signed this document in the belief that it "was a more-or-less meaningless gesture." But he does not allege that enforcement or prosecution officials, or his counsel, so advised him, or that anyone advised him, in effect, that he could, without compunction, file a false statement of this kind. This being the case, the district court was entitled to accept the document, signed by Oliver at the time the plea was received, as record evidence of Oliver's knowledge and frame of mind when he pleaded guilty.[6]

than to deny the application. But since, under *Sanders*, at 19, 83 S.Ct. 1068, denial without a hearing is not a denial on the merits, and since in any event, res judicata does not apply in section 2255 proceedings (United States v. Gomez, 9 Cir., 396 F.2d 323 decided June 13, 1968), such a denial is without prej-

We also hold that Oliver's allegations concerning noncompliance with Rule 11 are insufficient to entitle him to an evidentiary hearing on this section 2255 application. It is true that the district court did not address Oliver personally in determining that the plea of guilty was made voluntarily with understanding of the nature of the charge and the consequences of the plea. In this respect, the procedure was inadequate under Rule 11, as amended effective July 1, 1966. But when Oliver entered his plea in 1964, Rule 11 did not require that the defendant be addressed personally. The written statement, signed by Oliver, as described above, completely fulfilled the requirements of the rule as it then stood.

Affirmed.

udice and a failure to direct amendment rather than to deny outright is not a ground for reversal.

6. What has been stated above, in note 5, concerning the course open to Oliver if he can make supporting factual allegations, is also applicable here.