Larson **TETON**, an inmate of the Wyoming State Penitentiary, Rawlins, Wyoming, Register No. 9408, Appellant (Petitioner below),

v.

The STATE of Wyoming, Appellee (Respondent below).

No. 3890.

Supreme Court of Wyoming.

March 12, 1971.

---

1. Plaintiff, of course, has not contended that the judge did not have jurisdiction over the subject matter.

John L. Vidakovich, Lander, Michael W. McCall, senior law student, University of Wyoming, Laramie, for appellant.

James E. Barrett, Atty. Gen., Frederic C. Reed, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Petitioner, who in 1963 had pleaded guilty to second degree murder and been sentenced to "not less than twenty years or during life,"[1] applied to the district court for post-conviction relief pursuant to §§ 7–408.1—7–408.8, W.S.1957 (1969 Cum. Supp.). The State moved to dismiss the petition because (1) it failed to state a claim upon which relief could be granted and (2) the appellant was out of time, not having filed within the five-year period as provided by § 7–408.1. The trial court, upon consideration of the record and argument of counsel, granted the motion to dismiss, finding, inter alia, that petitioner's plea had been voluntarily, intelligently, and understandably entered under the law, that his guaranteed rights under the Constitutions of the United States and the State of Wyoming had not been violated, and that the application for post-conviction relief was out of time, having been filed more than six years after the conviction and sentence and petitioner having made no sufficient showing that the delay was not due to his neglect.

The facts disclosed by the record show that on June 7, 1963, Larson Teton was charged with the first degree murder of Lynn St. Clair on June 6; that he waived preliminary hearing before the justice of the peace and was held without bond pending disposition by the district court; and that on July 2 the district court issued an order stating that Mr. Teton had waived preliminary hearing without benefit of counsel and directing the matter be sent back to the justice of the peace for preliminary hearing.[2]

On July 11 at 9:30 a. m., Mr. Teton was arraigned in the district court and the record shows the following colloquy to have taken place:

"MR. OELAND [defendant's counsel]: Your Honor, the defendant is charged with murder in the first degree. We are willing to plead to a charge of second degree at this time. We trust that the State will elect to proceed only on the second degree charge and to eliminate

---

1. The court takes judicial notice of the fact that the State Board of Pardons has since commuted the sentence and that as of now petitioner's discharge could be June 9, 1986, if the sentence is not further reduced by the board.

2. The record contains nothing regarding the ordered preliminary hearing.

from the information the wording 'with premeditated malice.'

"THE COURT: Mr. Teton, come forward. You have heard the statement of Mr. Oeland. He is your attorney in this matter?

"MR. TETON: Yes.

"THE COURT: You understand that murder in the second degree is still quite a serious crime, carrying a minimum of twenty years in the penitentiary?

"MR. TETON: Yes, Your Honor.

"THE COURT: You understand that?

"MR. TETON: Yes. I got a wife and three kids.

"THE COURT: Do you wish to enter this change in plea?

"MR. TETON: Yes, I'd like to get it over with, take the second degree.

"THE COURT: You are willing and wish the plea of guilty to second degree murder be entered?

"MR. TETON: Yes.

"THE COURT: What is the State's disposition?

"MR. MOCKLER: If it please the Court, for the record, the State will state for the record, we feel the facts indicate the parties involved were dirnking [sic], which would destroy the element of premeditation.

"THE COURT: Your investigation was such as you are convinced of this fact?

"MR. MOCKLER: It is.

"THE COURT: Let the record show then, that the plea of guilty to the crime of second degree murder, which is concluded [sic] in the charge of this case, be entered in the record. I wouldn't care to pass sentence, in this case, without more information as to the circumstances surrounding the case. Could you give me that information?

"MR. MOCKLER: I can, Your Honor. I can prepare a written report in our office."

At 2:40 p. m. the court reconvened in the case and the following occurred:

"THE COURT: * * * The defendant will come forward with his counel [sic]. This morning you had the plea of guilty to second degree murder. Have you anything to say at this time, why the judgement [sic] and sentence of this court should not be pronounced on you pursuant to that plea?

"MR. TETON: No, I havn't [sic].

"THE COURT: Counsel, do you have anything to say on his behalf?

"MR. OELAND: I would make a few remarks, like to make a few remarks to the Court concerning this affair that happened here in Lander. The facts of the situation as set forth in a report from the County Attorney's office, as near as I can tell, are complete and factual and there is no dispute concerning what they say, in that report."

The court asked about some former difficulty of Mr. Teton, who explained that in 1949 while on parole from the Idaho penitentiary he had "got into a fight with two guys" at Ft. Washakie and as a result had been tried in the Federal court at Cheyenne and "got a year and a day out of it." Mr. Oeland then recounted to the court details of the St. Clair shooting after which the court addressed Mr. Teton and sentenced him. The county attorney's report of facts, which is a part of the record, reads:

"On June 5, 1962 the defendant, Larson Edward Teton, met several people, including Burton Hutchinson, Winifred Santillenes, Lovella Hutchinson, Leonard Moss, Ray Nado, at the Union Bar in Lander, Wyoming. According to the statement of the defendant, he had been drinking quite heavily for about two months and on that day had been drinking in the morning and had gone home and slept awhile and had returned that evening to do more drinking.

"The drinking continued until the Union Bar closed, at which time the entire group went to the house rented by Winifred Santillenes and shared by her with the defendant. The crowd took with them some beer and wine. The drinking con-

tinued at the Santillenes residence and about 3:00 A.M. the defendant left the room in which the others were drinking and went into an adjoining bedroom where he picked up the weapon, a 9 mm. German-made machine pistol, loaded the same, and returned to the doorway between the two rooms.

"He was observed at this time by one witness, Winifred Santillenes, who, upon observing this, left the house.

"According to statements of the witnesses the defendant asked the deceased, Larry St. Clair, who was seated on a couch approximately 15 feet away, 'where he wanted it'. The deceased replied, 'between the eyes'. The defendant then apparently fired two rounds from the automatic weapon, one of which struck the deceased on the bridge of the nose, just below a point midway between the eyes, the second striking the deceased in the forehead approximately three inches above and to the left of the first shot.

"One of the bullets passed through the head of the deceased and entered the shoulder of Ray Nado, who was sitting on the arm of the couch, immediately behind the deceased.

"The defendant then apparently replaced the gun between the mattress and springs of the bed from where he had first taken it, and the rest of the occupants fled the house.

"The city police were notified by Burton Hutchinson and other members of the party. Upon arrival at the house the authorities found the defendant and the deceased and one Violet Wanstall, who was passed out in the living room of the dwelling. The defendant readily admitted the shooting. He was permitted to go to the bedroom to show the authorities where the weapon was. He pulled the weapon from between the mattress and springs and turned toward an officer, who immediately took the weapon from him.

"The defendant appeared to be in an intoxicated condition at the time the au-thorities arrived and was taken to the County Jail and booked and allowed to sober up before appearing before the Justice of the Peace that afternoon.

"The defendant is 30 years old, and states that he is married to Bernetta Teton, aged 37, living in Nixon, Nevada; that they have three children, Donna, aged 10 years, Roberta, aged 12 years, and Phelan, aged 13 years.

"The defendant was on parole from the Idaho State Penitentiary at the time of the commission of this offense. His record indicates previous convictions in 1949 and 1951 as follows: 9–7–49 awaiting trial for assault with a deadly weapon. Two convictions of selling liquor to Indians. The offense for which he served time in the Idaho State Penitentiary was grand larceny."

Petitioner's counsel argue that the court erred in the dismissal for failure to state a claim on which relief could be granted when the petition had alleged that the transcript of the proceedings was insufficient to show that the plea of guilty had been voluntarily, intelligently, and understandably entered, when at the time of the sentencing the accused had been going through the stages of alcohol withdrawal which disabled him from understanding his plea or its consequences, and when the petition alleged that the corpus delicti of second degree murder was not present at the time of the shooting because the element of drunkenness prevented the requisite intent, and further that the court erred in granting the motion to dismiss upon the ground that the application was out of time where the delay was not due to his neglect and where the substance of his claim was that his conviction was constitutionally void, as violative of due process.

Petitioner ably and forcefully contends throughout the appeal that his plea of guilty was taken under circumstances which violated various provisions of the Constitution of both the United States and the State of Wyoming, depriving the court of jurisdiction and rendering the judgment and sen-

tence void ab initio, and that no statute of limitation can foreclose an individual's constitutional rights by restricting the time allowed for post-conviction remedies. Since the argument as to jurisdiction can be valid only if the proceedings at the guilty plea were improper, we examine what then occurred.

We note at the outset petitioner's claim that at the time of the plea and sentence he was "going through the stages of alcohol withdrawal and thereby was disabled from comprehending his plea and its consequences," that such allegation not being disprovable by the record must be given its day in court. However, it is our view that since the record disclosed the now-questioned plea was entered at a time over thirty days after petitioner's having been taken into custody, the mere allegation of "alcohol withdrawal" without more, did not warrant a hearing.

Passing to other aspects of the thesis that the plea was not voluntarily, intelligently, and understandably entered, we bear in mind accused's explanation to the judge of his having previous to 1949 been in an Idaho penitentiary and further that he "got a year and a day" in the Federal court at Cheyenne for assault after the release from Idaho. Such conversation would scarcely seem to be that of a person unacquainted with the occurrences and practices of law enforcement officials and courts. With that backdrop, we review the previously quoted discussion which took place at the time of the plea. It is of some significance that Mr. Teton's then counsel, not the prosecutor, announced to the court Mr. Teton's willingness to plead and stated the conditions of the plea. When questioned by the court, accused answered that he understood the seriousness of the crime and again several hours later when asked if he had anything to say why sentence should not be pronounced on his plea of second degree murder said he had not. Counsel now emphasize the court's failure to state the maximum of the sentence and also focus attention on Mr. Te-

ton's addition to his affirmative response by saying "I got a wife and three kids." The entire colloquy between the court, accused's counsel, and accused, both in the morning and the afternoon of the plea must be considered together; and when so considered, the finding of the court in the post-conviction hearing was correct:

> " * * * The presiding Judge having personally addressed the Petitioner and informed him of the nature of the charge against him and the consequences of pleading guilty thereto, and having twice asked Petitioner if he desired to so plead, had satisfied the test under the Wyoming Rules of Criminal Procedure and the United States Supreme Court decision of Boykin v. Alabama, 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274], decided June 2, 1969, that Petitioner was represented by counsel, and that his plea of guilty was voluntarily, intelligently and understandingly entered * * *."

Protest is made that the court's finding was demonstrably false because it violates the pronouncements of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. We must disagree. That case as any other must be interpreted in the light of the facts on which it was based and not by excerpting without background phrases which are favorable to the citator. It will be recalled that in Boykin the court said, 395 U.S. at 239, 89 S.Ct. at 1710, 23 L.Ed.2d at 277, "So far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." Since the facts in that case and the present one are markedly different, counsel indulges in considerable extrapolation when he says that under the holding of Boykin the plea here was not voluntarily, intelligently, and understandably entered. We regard such view to be unwarranted. Furthermore, there is no present holding in the Supreme Court that Boykin is retroactive in the questioned area. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, 756.

The emphasis in the appeal on the court's error in granting the motion to dismiss the post-conviction petition because it failed to state a claim upon which relief could be granted "where it was alleged that the corpus delicti of second degree murder was not present according to the law of Wyoming on July 11, 1963, as a consequence of which the sentence the Petitioner received was illegal, invalid and denied Petitioner due process of law" would, of course, pose a serious problem, except that it has heretofore been answered. As is conceded, not only did State v. Brown, 60 Wyo. 379, 151 P.2d 950, 955, indicate that a plea of guilty dispenses with proof of corpus delicti and relieves the State of any necessity of proof, but also Gustavenson v. State, 10 Wyo. 300, 68 P. 1006, 1010, held that voluntary intoxication was no defense to a charge of · murder in the second degree. Extensive effort is made by brief and argument to alter that rule by reference to various cases, both in this jurisdiction and elsewhere, in which the meaning of "intentionally or deliberately" was discussed. However, under the circumstances present in the instant situation the cited cases do not alter the Brown and Gustavenson holdings. Incidentally, reliance seems to be placed on Hulsey v. United States, 5 Cir., 369 F.2d 284, 286, as to the impropriety of a court's taking a plea from one who claimed he had been drinking heavily at the time of the alleged offense and did not remember anything about the circumstances. There, however, the defendant had elected to enter the plea without the assistance of counsel, and the reviewing court was undoubtedly justified in noting the duty of one taking a plea to advise the accused "fully and not merely perfunctorily as to what acts are necessary to establish guilt."

· ▆ Considering all of the facts and circumstances as disclosed by the original record, we find no error in those proceedings and accordingly the petition for post-conviction remedy was properly dismissed, which view renders unnecessary a discussion of the lateness in requesting post-conviction relief. Whether in complying with § 7–313, W.S.1957, requiring the establishment of a maximum and minimum term for one convicted of crime, the court was harsh in setting the maximum at life might be debatable. Admittedly, sentencing is not a scientific procedure but rather one on which there is a great divergence of opinion as to proper terms of incarceration. As disclosed by the record, the philosophy with which the court here approached the matter indicates a careful consideration and valid reasons for what was done:

"Your record, Mr. Teton, would indicate there is little the Court can say that hasn't been inflected [sic] as far as you are concerned. Apparently, this is, of course, the third felony you have been involved in besides two other convictions of selling liquor to Indians. Your record would indicate that you are completely anti-social in characteristic. And it is in the best interest of society to put you away for a long enough time that you will no longer be a menace to those around you. The fact that you could kill a friend for no apparent reason, while under the influence of liquor, would indicate to the Court that you are extremely dangerous. It will be, therefor [sic], the judgement [sic] and sentence of the Court that you will be remanded to the custody of the Sheriff of Fremont County and, by him, be delivered to the Warden * * * and that you be confined to the Wyoming State Penitentiary * * * for a period of not less than twenty years, or during life. What period of time you serve down there, of course, is beyond the control of this Court. The State Board of Parole and Probation have the matter in their hands and can keep you there as long as they think it is necessary during your natural lifetime. The history of the institution, however, and the action of that board, is that they will let you out just as soon as you exhibit to them that you have been fully and completely rehabilitated and are a fit subject to go back out into society again.

So it is up to you how long you stay there. * * * "

If the sentence in retrospect seems unduly severe, this is something which can be remedied by the Board of Pardons upon a consideration of the court record, together with that of Mr. Teton's conduct during incarceration as indicating rehabilitation and warranting some reduction of sentence. Such reduction of sentence has already once occurred and undoubtedly will again be given attention in due time.

Affirmed.