Kevin Joseph BIBBINS,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 84-67.

Supreme Court of Wyoming.

March 20, 1985.

Leonard D. Munker, State Public Defender; Martin J. McClain, Appellate Counsel, Wyoming Public Defender Program, Cheyenne; and K. Leslie Delk, Asst. Public Defender, Wyoming Public Defender Program, Laramie, for appellant.

Kevin Joseph Bibbins, pro se.

A.G. McClintock, Atty. Gen.; Gerald A. Stack, Deputy Atty. Gen., Criminal Divi-

sion; John Renneisen, Sr. Asst. Atty. Gen.; Roger Fransen, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

This appeal is from the district court's denial of appellant's petition for post-conviction relief. Appellant contends that his constitutional rights were violated before his plea of guilty and at sentencing. The issue, according to appellant, is, "Whether the district court erred in dismissing on its face appellant's petition for post-conviction relief."

We will affirm.

On July 2, 1982, on the basis of a negotiated plea, appellant pled guilty to one count of aggravated assault. In exchange for this plea, another count of aggravated assault was dismissed. After a presentence report was received and a sentencing hearing, sentence was imposed September 9, 1982. Appellant was sentenced to not less than two years and not more than six years in the penitentiary. The court considered the sentence a "high maximum and relatively low minimum." On February 9, 1984, appellant filed a petition for post-conviction relief according to § 7-14-101, et seq., W.S.1977. On February 14, 1984, the district court filed an order denying appellant the relief prayed for in his petition.[1]

In appellant's pro se petition for post-conviction relief, he states:

"* * * [T]he defendant was denied his constitutional right to a fair and impartial trial when these 2 court appointed public pretenders [sic] failed to adequately and competently to represent the defendant for the following reasons set out below * * *."

Appellant then lists 25 complaints against his court-appointed lawyers.[2] Appellant also contends that he was

"* * * denied his constitutional right to a fair and impartial trial, sentencing hearing when the prosecutor either by knowingly using such perjured testimony and or by knowingly using a perjured pre-sentence investigation report * * * or actively suppressing such evidence known to be exculpatory."

Appellant further claims that his plea of guilty was procured by fraud, coercion and was involuntary. He also lists seventeen separate provisions in the United States and Wyoming Constitutions that he maintains were violated. However, he does not explain in any way how these seventeen constitutional provisions were violated; he only reminds us of the rights protected.

The essence of appellant's petition is:

A. His plea of guilty was induced by fraud, and coercion and was not voluntarily made.

B. The prosecutor used perjured testimony and/or a perjured presentence investigation report and suppressed exculpatory evidence.

C. Inadequate court-appointed counsel resulted in a denial of a fair and impartial trial.

Section 7-14-101, W.S.1977, provides in part:

"Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the constitution of the United States or of the state of Wyoming, or both, may institute proceedings under this act [§§ 7-14-101 to 7-14-108]. The proceeding shall be commenced by filing with the clerk of the court in which the

1. Between September 9, 1982, and February 9, 1984, appellant was not in hibernation. He inundated the trial court with motions, petitions, affidavits, letters, advice, questions, requests, and every conceivable complaint. In one letter, for example, he asked the trial judge how much he was paid on the side to send him to prison.

2. Appellant has nearly depleted the staff of the public defender's office. A second lawyer from the public defender's office was appointed at appellant's insistence after his plea of guilty. Two other lawyers prepared his trial brief, and two different lawyers represented appellant at oral argument.

conviction took place a petition verified by affidavit. * * * The clerk shall docket the petition upon his receipt thereof and bring the same promptly to the attention of the court. * * * "

Section 7–14–106, W.S.1977, provides:

"The court may receive proof by affidavits, deposition, oral testimony, or other evidence. In its discretion the court may order the petitioner brought before the court for the hearing. If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings and such supplementary orders as to rearraignment, retrial, custody, bail or discharge as may be necessary and proper."

Appellant complains that five days after the petition was filed, the court dismissed it. He concludes from the court's disposition that "the court's action can only be classified as either a dismissal for failure to state a claim upon which relief can be granted or a judgment on the pleadings." The record does not support appellant's characterization of the court's disposition of his petition. The court recited in its order that it had inquired into the matter, found no legal basis for the motion (petition) and denied the motion (petition)—not dismissed it.

■ We conclude from the recitation in the trial court's order of denial that the court did more than deny the petition on its face. We must assume that the court's inquiry included an examination of the court file. The file contained the arraignment, change of plea, sentencing hearing, and the innumerable materials referred to in footnote 1.

■ The post-conviction procedure set out in §§ 7–14–101 through 7–14–108, W.S. 1977, does not mandate a formal hearing nor does it require that a petitioner be brought back into court for a hearing. Whether a formal hearing is held or a petitioner is brought personally before the court seems to depend on the circumstances of each case. Whether oral testimony, depositions, affidavits or other evidence is produced, likewise depends on the circumstances of each case. Here, the trial court acted on the petition before it, considering only the court file. It was apparently determined from the court file that there was no legal basis for the petition. We cannot say that the trial court was clearly wrong.

In *Boggs v. State*, Wyo., 484 P.2d 711, 715 (1971), we said:

" * * * Before a person is entitled to an evidentiary hearing he must present initially a substantial claim, and some specificity is required. An application is properly denied without a hearing where it states only bald legal conclusions with no supporting factual allegations. [Citation.] Here there were no factual allegations supporting the contention which was in conclusory form. The law does not grant an absolute right to an evidentiary hearing on the application. [Citations.]"

In this case the allegations in appellant's petition consist principally of bald legal conclusions sans specificity.

### A.

■ Appellant contends that his "plea of guilty was produced fraudulently, coercively and involuntarily." This accusation is an unwarranted conclusion, and lacks specificity, but more significantly, flies in the face of the record. On July 2, 1982, at the change-of-plea hearing, the record reveals the following:

"THE COURT: * * * [D]o you make this plea under any threat or any coercion?
"THE DEFENDANT: I make it voluntarily, Your Honor."

The trial court was abundantly justified in determining that there was no merit to appellant's claim that his guilty plea was obtained improperly.

### B.

Appellant contends that the prosecutor used perjured testimony and/or a perjured presentence investigation report. Alternatively, appellant says the prosecutor active-

ly suppressed evidence known to be exculpatory. We have difficulty identifying the "testimony" that appellant alludes to.

" * * * 'Testimony' is a particular kind or species of evidence, namely, that which comes to the tribunal through living witnesses speaking under oath or affirmation in the presence of the tribunal, judicial or quasi-judicial. [Citations.]" *State v. Ricci,* 107 R.I. 582, 268 A.2d 692, 697 (1970).

" * * * [F]requently the word 'testimony' and 'evidence' are used synonymously, although technically the word 'testimony' has a more limited meaning than the word 'evidence.' * * * " *Rafferty v. Northern Utilities Company,* 73 Wyo. 287, 278 P.2d 605, 615 (1955).

At the sentencing hearing, the prosecutor and defense counsel argued the case to the court, but neither produced testimony or introduced evidence. The nearest thing to testimony produced at the hearing was from the mouth of the appellant. The court invited, nay urged, appellant to tell the court anything and everything he desired. Appellant addressed the court at length. He characterized his case as one of self-defense and related some of the circumstances. However, he did not recant on his guilty plea nor did he say he was not guilty. In fact, he said twice that he was wrong in what he did.

In his address to the court, appellant did not disagree with the information in the presentence investigation report which recited that he had been convicted of (1) "kidnap, assault with intent to rape, assault with intent to murder" in November, 1976; (2) "assault with a deadly weapon" in March, 1978; and (3) also juvenile offenses.

■ As nearly as we can tell, the alleged perjured testimony that appellant alludes to was the presentence investigation report which was placed in the court file eighteen days before the sentencing hearing. We say this because when appellant addressed the court at the sentencing hearing, he disputed the prosecutor's characterization of some of the information in the report. Specifically, appellant was wroth because

his association with a woman was not recognized as a common-law marriage. Also, he was in disagreement with the prosecutor regarding his status as a parolee from California, and claims that whether he absconded from parole in California or whether he had permission to leave California affected the severity of his sentence. In view of the serious nature of the offense to which appellant pled guilty and his prior criminal convictions, it is inconceivable that this made any difference in his sentence.

If there was something other than the two matters we have identified that appellant claims were perjured, he kept it a secret from the trial court and this court. The trial court recognized the common-law relationship that seemed very important to appellant. The judge then said, "I have an inclination to believe a good deal of what you say, Mr. Bibbins."

■ With respect to the so-called perjured testimony, appellant also says the prosecutor suppressed such evidence known to be exculpatory. Here again the only thing he ever talked about were entries in the presentence investigation report. There is nothing exculpatory in that report; some of it, however, is favorable to appellant. Based on the court file, the court could determine, as it did, that there was no basis for a serious claim of perjured testimony or suppression of exculpatory evidence.

### C.

Appellant's 25 numbered complaints against assigned counsel are directed primarily against the lawyer who handled his case through a change of plea to guilty. The complaints against counsel at the time of sentencing generally pertain to the alleged perjured testimony and exculpatory evidence which we have already addressed.

In appellant's change-of-plea hearing, the court inquired:

"THE COURT: Are you fully satisfied with her [defendant's counsel] representation of you?

"THE DEFENDANT: Yes, Your Honor."

█ At the sentencing hearing, appellant's counsel made a vigorous plea and argument for probation. As we have indicated before, there was no merit to appellant's claim of perjured testimony or suppressed exculpatory evidence. These latter two matters seem to be appellant's principal complaint against his counsel at the time of sentencing. Appellant did not complain about his current counsel at the sentencing hearing. We see nothing in the record that suggests incompetent counsel or any dereliction in handling appellant's case.

█ Although this claim is obscured in the 25-count indictment of his two lawyers, appellant says that he was mentally incompetent at the change-of-plea hearing and at the sentencing. This diagnosis is subjective and self-serving, and has absolutely no basis so far as we can ascertain from the record. Upon inquiry by the court appellant repeatedly said he understood the proceeding. See, e.g., *United States v. Cooper*, 410 F.2d 1128 (5th Cir.1969), cert. denied 400 U.S. 868, 91 S.Ct. 111, 27 L.Ed.2d 107 (1970). We do not see any merit to appellant's claim of incompetency.

█ It would appear that appellant found a digest that cataloged possible constitutional violations, copied this list in his petition for post-conviction relief, and stated that this litany of violations applied to him. For example, appellant talks about "the verdict." There was no verdict. He mentions search and seizure; there was no search or seizure problem. He talks about rights reserved to the people. It appears that appellant charged in his petition every constitutional violation that he had ever heard of or could learn about, hoping that the trial court or this court could find one or more that might fit his circumstances.

We have carefully reviewed the entire record of proceedings. Nothing is disclosed which would support appellant's allegations that his guilty plea was induced by

fraud, coercion and was involuntary. Also, the claimed use of perjured testimony and the suppression of testimony is without merit. The denial of a fair and impartial trial because of inadequate counsel has no support in the record.

We hold, therefore, that the petition for post-conviction relief was properly denied.

Affirmed.

ROSE, Justice, dissenting.

I would have reversed the denial of post-conviction relief and remanded this case to the district court with directions to afford appellant an opportunity to amend his petition so as to include specific factual allegations, supported by attached affidavits or other evidence.

As the majority note, appellant Kevin Bibbins' petition for post-conviction relief consists primarily of general allegations and legal conclusions. However, instead of permitting appellant an opportunity to amend his petition to include factual specificity and evidentiary support, the majority conclude that the court file provided a sufficient basis upon which to determine the merits of the petition. The majority reason:

"* * * Whether oral testimony, depositions, affidavits or other evidence is produced, likewise depends on the circumstances of each case. Here, the trial court acted on the petition before it, considering only the court file. It was apparently determined from the court file that there was no legal basis for the petition. We cannot say that the trial court was clearly wrong." 696 P.2d at 1303.

While the court records of a petitioner's guilty plea may, under some circumstances, adequately support a claim for post-conviction relief,[1] such evidence had little, if any, relevance to the claims raised in the case at bar. Appellant alleges that his guilty plea was obtained through coercion and fraud. Evidence of such wrongdoing could hardly be expected to appear in the hearing tran-

1. See, for example, *Hoggatt v. State*, Wyo., 606 P.2d 718 (1980).

scripts. Similarly, the instances of ineffective assistance of counsel alluded to by petitioner could have occurred outside the record. The majority readily admit that the alleged perjured documents or testimony cannot be discerned from the bare record.

The need for definite factual allegations and supporting evidence from one in appellant's position is apparent, and our post-conviction-relief statutes, §§ 7–14–101 through 7–14–108, W.S.1977, demand such specificity. Section 7–14–101 requires the filing of a verified petition for the redress of constitutional violations:

"Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the constitution of the United States or of the state of Wyoming, or both, may institute proceedings under this act [§§ 7–14–101 to 7–14–108]. The proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition verified by affidavit * * *."

Section 7–14–102 directs the petitioner to state his claim clearly and to attach supporting evidence if possible:

"The petition shall * * * clearly set forth the respects in which petitioner's constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting the allegations or shall state why the same are not attached. * * * "

We recently reviewed these statutes in *Hopkinson v. District Court*, Wyo., 696 P.2d 54 (1985), and concluded:

" * * * Before a person is entitled to an evidentiary hearing on a petition for post-conviction relief, there must be set forth in the text of the petition and the required supporting attachments a substantial claim plus some specificity in support of the claim. *Boggs v. State*, Wyo., 484 P.2d 711 (1971). In order to justify a hearing, there must be more than a naked statement of a conclusion unsupported by an evidentiary basis.

*Cook v. State*, 220 Kan. 223, 552 P.2d 985 (1976); *State v. Gillihan*, 85 N.M. 514, 514 P.2d 33 (1973). There must not only be verified factual allegations in the petition, § 7–14–101, but the statutory requirement is that they must be supported, likewise with some specificity, § 7–14–102." 696 P.2d at 61.

We recognized in that case the extraordinary nature of post-conviction relief, but said:

"However, if a petitioner makes a showing of innocence or probability of a different verdict by appropriate attachments to his petition which indicates a need for verification at a hearing, then a hearing may be granted. If good cause is shown, a review is available." 696 P.2d at 65.

The court in the instant case attempted to review petitioner's bald conclusions using only the court file, a process doomed from the start.

The proper solution for the trial court, when presented with a deficient petition for post-conviction relief, is to allow the petitioner an opportunity to amend. We recommended this course in *Boggs v. State*, Wyo., 484 P.2d 711, 714 (1971):

"Where there are insufficient factual allegations in support of an application to warrant an evidentiary hearing, it is usually better practice to permit the petitioner to amend his petition than to dismiss it. *Oliver v. United States*, 9 Cir., 398 F.2d 353."

The ability to amend is important in post-conviction-relief proceedings since a prisoner waives all claims not raised in the original or an amended petition. Section 7–14–103 provides:

"Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."

Thus, our statutes contemplate amendment as a procedural right which protects the prisoner against the loss of claims inadvertently omitted or ineffectively articulated in the original petition.

In summary, Wyoming's post-conviction-relief statutes, as interpreted by this court

in previous cases, entitle a prisoner to an evidentiary hearing on a claimed constitutional violation if his petition contains specific factual allegations supported by affidavits or other evidence. The statutory scheme contemplates the amendment of inadequate petitions. As a general rule the trial court should allow a petitioner a specified time within which to amend his petition to reflect the necessary factual specificity and support. If a petition remains deficient after an opportunity for amendment, the court may justifiably dismiss without holding a hearing. *Boggs v. State*, supra. However, an amended petition which complies with statutory requirements should, typically, entitle the applicant to a hearing. In this way, courts can encourage and properly review potentially meritorious' claims and, at the same time, avoid having to rule upon vague, inadequately supported contentions.

I do not intend to suggest by this dissent that the district court must, in every situation, allow an opportunity for amendment of a deficient petition for post-conviction relief. Where, for example, a petition presents the identical issues already fully, and perhaps repeatedly, reviewed by this court, the applicant should be expected to include in his original petition the factual basis for reconsideration of his claims. *Hopkinson v. District Court*, supra. However, in the present case, where the petitioner's claims have never been considered by this court and where the court record provided an obviously inadequate basis for review, the petition should not have been dismissed or denied without allowing an opportunity for amendment.