**Dennis KALLAS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff) (Two Cases).**

Nos. 87–241, 87–242.

Supreme Court of Wyoming.

June 21, 1989.

Julie Naylor, Appellate Counsel, Public Defender Program, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., and Gerald P. Luckhaupt, Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT and MACY, JJ., and BROWN, J. Ret.*

CARDINE, Chief Justice.

This appeal is from an order dismissing appellant Dennis Kallas' petitions for post-conviction relief.

We affirm.

In 1984, Kallas pled guilty, and judgment was entered on his pleas, to the crimes of second degree sexual assault and taking indecent liberties with a minor. Kallas appealed those convictions, and we affirmed in *Kallas v. State,* 704 P.2d 693 (Wyo.

\* Retired June 29, 1988.

1985). The facts of the case are adequately set out in that opinion.

■ In this appeal, Kallas asserts two issues. First, he claims that the petition under review is his first post-conviction relief petition. Wyoming Statute 7–14–103 provides that any claim not raised in an original or an amended petition is waived. This issue arises because prior to the filing of the petitions for post-conviction relief that are under review here, Kallas filed an untitled, pro se document in which he moved the court "pursuant to Title 28 U.S.C. 2254 et seq. to issue a post-conviction on the lesser sentence * * *." As is often the case with pro se documents, it is difficult to ascertain the exact nature of this filing. Because of this uncertainty, we will not dispose of the case based on the waiver which might have arisen from the application of W.S. 7–14–103 to the facts of this case.

■ As a second issue, Kallas asserts that the district court erred in dismissing his petition without an evidentiary hearing. He claims a hearing was necessary because his trial counsel "guaranteed" him that, if he pled guilty, he would receive a three-to-five year sentence and further that trial counsel failed to object to various violations of his constitutional rights. The State responds to this argument contending these issues, not having been raised on appeal, were waived. It is a long-standing rule of law that issues that could have been raised on appeal are not open to challenge by a petition for post-conviction relief because they are foreclosed by the doctrine of res judicata. *Cutbirth v. State,* 751 P.2d 1257, 1261 (Wyo.1988). Kallas responds by arguing that, in accordance with Rule 1.04, W.R.A.P., only matters "appearing on the record" may be the subject of an appeal; that this issue is not in the record because his trial counsel told him not to ask any questions of the judge and to answer that he had not been promised any particular sentence; and that this issue, not appearing in the record, could not have been raised in his original appeal. Therefore,

Kallas concludes, he should be entitled to an evidentiary hearing to create a record and establish his claim of ineffective assistance of trial counsel.

█ The Wyoming Rules of Criminal Procedure and the Wyoming Rules of Appellate Procedure are replete with means by which a record may be augmented so that all issues which can or should be treated on appeal may be supported by reference to a record on appeal. See *Spilman v. State*, 633 P.2d 183 (Wyo.1981). It is abundantly clear from this record that Kallas was fully aware of all facts which supported this claim at the time his appeal was perfected in this court. It is the appellant's burden to insure the record on appeal is complete. *Matter of Estate of Manning*, 646 P.2d 175, 176 (Wyo.1982). Kallas may not so easily sidestep the bar to post-conviction claims that could have been asserted on appeal. Appellant's failure to augment the record and present these issues on appeal is a bar to presentation in post-conviction relief. *Cutbirth*, 751 P.2d 1257.

In dismissing Kallas' petitions, the district court found that all claims were barred because they were not raised in the original pro se petition which we decline to identify as a post-conviction relief petition. The district court also found that all claims raised in the petition under review here were barred because they could have been raised in Kallas' appeal. In addition, the district court dealt specifically with each of Kallas' claims on its merits. We affirm the district court's order because all matters raised by Kallas in support of the claim of ineffective assistance of trial counsel could have been raised on appeal and are, hence, barred by the doctrine of res judicata. *Cutbirth*, 751 P.2d 1257. For this reason, there can be no error in the district court's refusal to conduct an evidentiary hearing.

Affirmed.

URBIGKIT, Justice, specially concurring in the result and dissenting in the opinion.

In this second ineffectiveness of counsel constitutional rights forfeiture case, my complete disapproval of the pathway chosen by this court is exhaustively pursued in my dissent in *Amin v. State*, 774 P.2d 597 (Wyo.1989) and is reiterated. Furthermore, I do not concur with the majority that everything *could have been* raised on the first appeal even if the appellant, Dennis Kallas (Kallas), had been provided adequate assistance of appellate counsel to then address what is now being presented. The bland contention that this majority permits augmentation of an appellate record for events completely beyond the issues determined in the original proceedings from which an appeal could be taken is, at the very least, newsworthy.

In this decision, the majority says that we should now forfeit Kallas' rights because something was not properly done by his appellate counsel. This case illustrates even more explicitly why this jurisdiction drifts to solitude among all jurisdictions within its development of forfeiture/waiver obstacles to substantive disposition. As cogently related by Kallas, the issue of ineffectiveness of counsel could not be considered on the appellate record from his first conviction since his factual efforts to support that position would not have been available. Factual developments for events outside of the record were required. That process of factual development in most jurisdictions is habeas corpus or post-conviction relief. Additionally, as in this case, the first consideration of the direct ineffectiveness complaint is better addressed to the attention of the initial trial judge where the original trial counsel can be provided the opportunity to explain what occurred if doubt is created.

In direct disagreement with the conclusion of the majority, it is apparent that the appellate record for the first proceeding was complete as addressing what occurred during trial. It did not, however, address other factual contentions which arise in the collateral question of ineffectiveness of counsel. Again, what we see in juxtaposition taken and language used is the suggestion by the majority that appellate counsel was ineffective in failing to deter forfeiture or to avoid waiver for Kallas in the conduct pursued in his initial appeal.

My conviction is to the contrary and I will address this case and present petition in detail to establish substantively that neither was counsel ineffective nor was the trial court anything but extremely careful in the proceedings to receive the guilty plea. All talk about waiver of forfeiture is ill-presented since the initial proceeding was legally proper and constitutionally valid. My conception about a proper disposition of this case is to say just that and not wring out ogres of forfeiture or infuse what by definition did not constitute waiver. See *Amin*, 774 P.2d at 599 n. 2 (Urbigkit, J., dissenting).

On January 27, 1986, Kallas filed a Motion for Application for Post-conviction on the Lesser Sentence citing 28 U.S.C. § 2254 and W.S. 6–1–101(c), with a prayer for the trial court "to grant the petitioner Post–Conviction on a Lesser SENTENCE." [1] In response, the State moved "to dismiss the post-conviction relief petition." Reasons given were res judicata or preclusion by the prior appeal and insufficiency of the form of the document filed to constitute a proper post-conviction-relief petition. An order denying the application was entered without a definition of any issues decided and without an attorney for Kallas being either requested or provided. On January 28, 1987, as a new filing in sufficient form and properly presented, a Petition for Post–Conviction Relief was separately filed in each case, stating fifteen claims for relief. A motion to proceed in forma pauperis and for appointment of counsel was also made. Combined consideration of both cases was given in trial court proceeding and the same approach will be followed for my review here.

In response to the petition, the inevitable motion to dismiss was filed by the State with a basis of prior petition and consequent waiver. The office of the public defender was appointed to represent Kallas and to provide legal services which resulted in an amended petition, including a request for evidentiary hearing. Another motion to dismiss was filed by the State again reciting waiver by prior petition and now, substantively, that "an examination of the court file shows that the claims cannot provide relief under Wyoming's post-conviction statutes and that the petition should be denied." Addressed in the discussion were those substantive issues presented in this pro se and counseled amended petition. Following a non-evidentiary hearing, the trial court entered a decision with findings of fact and conclusions of law from which this appeal arises.

The inordinate effort by the State found in this record to avoid substantive decision belies the simplicity of the questions presented: (1) discretion of the trial court to deny an evidentiary hearing on a post-conviction-relief petition; and (2) ineffectiveness of counsel in plea consideration by Kallas.[2] Since the constituent of discretion is thoughtful analysis and informed decision, I analyze this case by looking at the substantive issue and then determine whether abuse of discretion is presented in denial of the evidentiary hearing.

The appropriate statute provided:

1. The provision of W.S. 6–1–101(c) provides:
   In a case pending on or after the effective date of this act, involving a crime committed prior to the effective date, if the penalty under this act for the crime is different from the penalty under the prior law, the court shall impose the lesser sentence.

2. I have no trouble in disposing of the first recitation of the State that this was an improper second petition. Whatever the first document may have been, as first challenged by the State as insufficient as a post-conviction-relief petition, it was in fact insufficient under the statute. The sustained motion to dismiss from the procedural attack on the first pro se filing did not constitute res judicata when a validly prepared and properly refined petition was subsequently presented. The petition, citing W.S. 6–1–101(c), was not addressed to post-conviction, W.S. 7–14–101 to 7–14–108, and was statutorily insufficient in form. *See also Sanchez v. State*, 755 P.2d 245 (Wyo.), *cert. denied* — U.S. ——, 109 S.Ct. 161, 102 L.Ed.2d 131 (1988) (Urbigkit, J., dissenting), where the majority determined that challenges to sentences *cannot* be presented by post-conviction-relief petitions and *Whitney v. State*, 745 P.2d 902 (Wyo.1987).

   My dissent in *Amin* speaks to the second contention of waiver/forfeiture from non-inclusion in first appeal. Unquestionably, the majority is determined to write out of waiver its intrinsic component and principal meaning: informed actual decision of the individual.

The court may receive proof by affidavits, deposition, oral testimony or other evidence and may order the petitioner brought before the court for the hearing. W.S. 7–14–106(a).[3]

This court has dispositively and uniformly determined that the nature of the hearing to be provided with a post-conviction-relief petition is a matter of discretion within the purview of the provisions provided by this statute. *Bibbins v. State*, 696 P.2d 1300 (Wyo.1985); *Matlack v. State*, 695 P.2d 635 (Wyo.), *cert. denied* 472 U.S. 1030, 105 S.Ct. 3508, 87 L.Ed.2d 638 (1985). Consequently, the question advanced is whether there was an abuse of discretion within the alternative approaches afforded to the trial court by the statutory language. One of the more challenging examinations of judicial discretion is found in Miller, *Behind the Green Door, in Chambers: Is There a Limit to Judicial Discretion?*, 12 Okla. City U:L.Rev. 59, 101–02 (1987), where the author concluded in part:

The essence of legal analysis is fundamentally quintessential. There are four fundamental objective neutral principles: equality, liberty, truth, and dignity. These are balanced and harmonized through a subjectively cognized legal principle: fairness.

\* \* \* \* \* \*

There is a limit to judicial discretion. Judges may not do as they please in chambers. The limit is not only precedent and the written law, but, more fundamentally, recourse to fundamental legal principles so as to objectify and externalize their legal analyses.

The legal values above explicated, equality, liberty, truth, and dignity, are neutral principles giving validity to legal decision. \* \* \* Flaws in legal analysis occur when one or more of the fundamental principles is ignored.

\* \* \* \* \* \*

\* \* \* The limit to judicial discretion is fairness, liberty, equality, truth, and the maximization of human dignity. There are profound values behind the green door.

I would add that it should not be forgotten that this desired fairness in criminal proceedings has a double dimension. In addition to the criminally charged defendant, society itself has an equal and cogently presented interest.

This record, including the guilty plea, confession and event corroboration, presents no contested question of guilt. Consequently, the severity of the sentence, as an initial appellate issue and again here presented, is at the crux of Kallas' arguments as stated in a most detailed letter to the court:

Now when it was time for me to go to court for the tri[al], Mr. Weerts come to me telling me we don[']t have a chance and that my wife had shown up for the tri[al]. At that time he told me it would be best if I would make a plea deal with him and Mr. O'Con[n]ell who at the time was the D.A[.] or pros[e]cut[o]r. Mr. Weerts knew I would not si[gn] any papers for a crime that carried Ten to Twenty years. So he took it up[]on himself to contact my mother and ask her for her assistance in talking me in to si[gn]ing this plea deal.

As we was talking I asked Mr. Weerts how much time could I get. He told me I could get five to twenty years, but if I went along with his and Mr. O'[C]on[n]ell[']s plea barga[i]n I wouldn[']t serve no more than (Three to Five years.) At the time he was also telling this to my mother also. When he told me the Maximum term I could get. I told him to forget it and that we would go to court, at that time he told me to com[e] down and that all I would receive would be three to five if I si[gn]ed the plea deal.

He also told me I had to do it quick because he needed it by Monday and this all happened on a Friday. After I si[gn]ed the plea deal, I was served with a warr[a]nt for my ar[r]est on some phony Drug charge six days later. I went before Mr. Judge Li[a]m[o]s on

---

3. W.S. 7–14–106(a) was amended effective June 9, 1988.

We[d]n[e]sday to [ac]cept my plea deal. When it was time for the pros[e]cut[o]r who was O'[C]on[n]ell to give his point of view, he asked if the Judge would give me 17 to 20 years. So what I see is nothing but lies from Weerts and O'[C]on[n]ell. So what happened was I was given the Max on both sentences.

I never been in court and I never [k]new what a plea deal was, not knowing it was to state the time within the plea barga[i]n I was si[gn]ing. All I did was si[gn] things that was promis[]ed to me by Weerts. At my sentence the Judge didn[']t tell me at any point how much time the crime carried, leaving [m]e bel[i]ev[]ing it carried Five to Twenty years. Even in the evalua[]tion that was done in Eva[n]ston, the Doctor stated that I bel[ie]ved I was on a charge of five to twenty. So you can see some[]one, who was Weerts had me bel[ie]ving I was to get five years and not TEN to TWENTY.

Re-reading the record presents a compelling basis for rejection of Kallas' contentions since this was a written plea agreement case.

In initial arraignment, the trial court stated to Kallas:

THE COURT: Okay. You understand, then, that—Mr. Kallas—that the penalty for second degree sexual assault, if you're convicted of one, is imprisonment for not more than 20 years. If you're convicted of both, then you would be subject to the enhanced penalty provisions of the statute, and, for the second conviction, you could be sentenced to not less than five years in the penitentiary and up to life.

Do you understand that?

THE DEFENDANT: Yes, I do.

And in further inquiry:

THE COURT: Okay. And, if convicted, what could happen to you [in the] worst case?

THE DEFENDANT: If convicted, I could possibly get five—no less than five years—and a max life.

THE COURT: Okay. That's if you're convicted of the other offense and this one. If you're only convicted of this one, the maximum would be 20 years.

THE DEFENDANT: Yes.

THE COURT: Understood?

THE DEFENDANT: Uh-huh.

A signed change of plea by Kallas stated:

COMES NOW the defendant herein and moves the Court for an Order granting leave to change his plea of not guilty, originally entered on May 11, 1984 and July 17, 1984, to a plea of guilty in according to a plea agreement.

The plea agreement further provided:

COMES NOW the defendant * * * and informs the Court that plea negotiations have been entered into in this matter and pursuant to those negotiations the parties have reached the following agreement:

1. The defendant was originally charged with Inflicting Sexual Intrusion, namely, anal intercourse in violation of § 6–2–303(a)(v). The State has agreed to reduce the charge to Taking Indecent Liberties With a Child in violation of § 14–3–105. The defendant has agreed to plead guilty to the reduced charge of Taking Indecent Liberties With a Child in violation of § 14–3–105.

2. The defendant was also charged with Taking Indecent Liberties with a Child in violation of § 14–3–105. The State has agreed to dismiss this charge.

3. The defendant has also been charged with Inflicting Sexual Intrusion, namely, fellatio in violation of § 6–2–303(a)(v) to which he has agreed to plead guilty.

4. This agreement contains the entire understanding of the parties.

Pursuant to the agreement, the second charge was reduced to indecent liberties and a third charge was dismissed. During Kallas' appearance before the trial court for entry of plea, the trial court inquired:

And, Mr. Weerts [defense counsel], what is the situation here? I see in the files an instrument denoted plea agreement. Could you tell me about it, sir?

MR. WEERTS: Yes, Your Honor.

Mr. Kallas was charged with two counts of 2nd degree sexual assault, one count of indecent liberties.

Through the plea agreement the state would dismiss the one count of indecent liberties with a minor, they would reduce the one count of 2nd degree sexual assault to a count of indecent liberties with a minor. The defendant would plead guilty to the reduced charge of having indecent liberties with a minor and plead guilty to the one count of 2nd degree sexual assault.

THE COURT: Thank you, counsel.

And, Mr. O'Connell, is that the position of the state?

MR. O'CONNELL: Yes, Your Honor. The count of 2nd degree sexual assault which the defendant will plead guilty to is in case number # 1911, and he would plead guilty to the amended charge in # 1896, indecent liberties with a minor.

THE COURT: Mr. Kallas, is that the situation as you understand it?

THE DEFENDANT: Yes, sir.

THE COURT: Any questions at all about the plea agreement that you've entered into with the State of Wyoming?

THE DEFENDANT: No, sir.

THE COURT: Mr. Kallas, do you feel that you know what you're charged with at this time?

THE DEFENDANT: Yes, sir.

THE COURT: And would you tell the court what you're charged with, then, in your opinion?

THE DEFENDANT: I'm charged with 2nd degree sexual assault and indecent liberties with a minor.

THE COURT: Do you know what the penalties are for those charges? Do you know what the penalty is for taking indecent liberties with a minor child?

THE DEFENDANT: Yes, I do, sir.

THE COURT: What is your understanding?

THE DEFENDANT: Minimum five years, maximum ten years.

THE COURT: And how about 2nd degree sexual assault?

THE DEFENDANT: Yes, sir.

THE COURT: What's that penalty?

THE DEFENDANT: Minimum five years, maximum twenty years.

THE COURT: Do you understand that a fine can be assessed in these matters in addition to the penitentiary sentence?

THE DEFENDANT: Yes, sir. Up to $10,000.

THE COURT: Now, Mr. Kallas, there's an agreement, plea agreement in the file signed by you, your lawyer, and Mr. O'Connell, the county attorney, representing the State of Wyoming.

I want to advise you that you're the only person that can agree to enter a plea of guilty. Mr. Weerts can't do that for you; the court can't do that; the county attorney can't do that. You're the only one. It's got to be your free and voluntary action, knowing your rights under the law, because in order to enter a valid plea of guilty you're going to have to waive all those rights, and you can't waive anything unless you know what you're relinquishing, what you are releasing in the matter of rights.

Is this your agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Now, has Mr. Weerts represented you through[ou]t all these proceedings?

THE DEFENDANT: Yes, he has.

THE COURT: Are you satisfied with his services as your lawyer?

THE DEFENDANT: Yes, sir.

Following this exchange, the trial court pursued an extensive course of advice and examination with Kallas as to his willingness to plead and knowledge of the charges, as well as the results by plea or conviction, and specifically:

THE COURT: Has anyone told you what the sentence of the court will be or that a deal has been made with the judge and that you'll receive probation or some other lenient treatment?

THE DEFENDANT: No, sir.

THE COURT: In short, Mr. Kallas, other than the plea agreements, have any conditions been imposed upon you by anybody to get you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: Now, sir, before I can accept these pleas of guilty the court must be satisfied that there are factual bases for each of these charges.

In a specific statement, the trial court then determined:

THE COURT: The court finds that Dennis Kallas is competent to withdraw his previously entered pleas in this matter and to enter pleas of guilty to these charges, that he has done so knowingly, he understands the nature of the charges, he understands the direct consequences, the penalties provided by law.

Further, the court finds that Mr. Kallas has entered his pleas of guilty voluntarily, without any improper inducement or conditions. He has not been coerced into taking this action, and he has a general understanding of the indirect consequences of his pleas of guilty.

Further, the court finds that the plea agreement has been entered into and the pleas of guilty given after consultation with competent counsel.

By virtue of the first appellate decision, propriety of the sentences of ten-to-twenty years for sexual assault in the second degree and five-to-ten years for indecent liberties to run concurrently is not here available for re-examination. *Kallas v. State*, 704 P.2d 693 (Wyo.1985); *McCutcheon v. State*, 638 P.2d 650 (Wyo.1982); *Johnson v. State*, 592 P.2d 285 (Wyo.), *cert. denied* 442 U.S. 932, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979).

The issue actually presented is whether the written record affords justification for the denial of an evidentiary hearing and rejection of the ineffectiveness of counsel charge. I recite the trial court record in detail to reject the present impeachment by Kallas. *York v. State*, 619 P.2d 391 (Wyo. 1980); *Teton v. State*, 482 P.2d 123 (Wyo. 1971); *Owens v. State*, 398 P.2d 556 (Wyo. 1965).

The clarity of that record shows that Kallas knew what he was doing. The implicit contention now made of attorney and defendant guessing wrong as to what the trial judge might do is at best hypothetical. The chances of an improved final result by acquittal after trial or improved sentence if convicted were minimal and only realistic in terms if the inculpatory confession statements could have been suppressed. In this case, on the events presented of two small children and multiple events, consecutive sentences and the possibility of a result approaching life imprisonment were not unrealistic alternatives following any adverse verdict. This is noted only to recognize that the plea decision was not particularly irrational since a degree of guilt was admitted.

The convicted petitioner needs an affidavit from the original trial attorney or other realistically believable corroboration of what he contends was different from what is established by the court record to justify an ineffectiveness of counsel evidentiary hearing. That heavy burden faced Kallas in the requirement to create a factual conflict sufficient to even attempt to contradict the official trial record of what the trial court said and how he responded. *Bibbins*, 696 P.2d 1300. As a most difficult task at best, this record does not carry the burden of reversal here. *UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584 (Wyo.1989). *See also Wilson v. Butler*, 813 F.2d 664, *reh'g* 825 F.2d 879 (5th Cir.1987), *cert. denied* — U.S. —, 108 S.Ct. 1059, 98 L.Ed.2d 1021, *reh'g denied* — U.S. —, 108 S.Ct. 1491, 99 L.Ed.2d 719 (1988).

This court has frequently restated in current time the parameters of discretion in *Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986) (citing *Byerly v. Madsen*, 41 Wash. App. 495, 704 P.2d 1236 (1985)):

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

In concurring with the result of this case, I agree with the trial court that the record presented by this post-conviction-relief petition provides no factual basis for exercised discretion to require an evidentiary hearing and that no supporting record is

presented to invalidate the guilty pleas by any claim of undemonstrated ineffectiveness of counsel. Both the trial judge and the defense counsel in guilty plea proceeding did what was properly required of them within the Wyoming justice delivery system, exercising proper judgment and providing adequate assistance of counsel. I would offer, based on a substantive review, that no basis for reversal is presented by this appeal.